**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

I.S.E.L., INC.,

    Plaintiff/Counter-Defendant,

vs.                                                    CASE NO. 3:08-cv-870-J-25TEM

AMERICAN SYNTHOL, INC.,

    Defendant/Counter-Claimant.

_____/

## O R D E R

This matter is before the Court on Plaintiff/Counter-Defendant I.S.E.L., Inc's ("Plaintiff") Motion to Compel Documents and Answers to Deposition Questions (Doc. #61), Plaintiff's Second Motion to Compel Production of Documents (Doc. #62), and Defendant/Counter-Claimant American Synthol, Inc.'s ("Defendant") responses in opposition thereto (Docs. #63 and #64). A motion hearing was held before the undersigned on August 11, 2009 (*see* Doc. #71, Minutes).[1]

For the reasons stated herein and on the record at the hearing, Plaintiff's Motion to Compel Documents and Answers to Deposition Questions (Doc. #61) shall be granted. In addition, Plaintiff's Second Motion to Compel Production of Documents (Doc. #62) shall be deemed moot with leave to refile, if necessary.[2]

---

[1] The non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing is desired.

[2] At the hearing, Plaintiff acknowledged that this was the most appropriate resolution of the motion at this juncture.

In its Motion to Compel Documents and Answers to Deposition Questions (Doc. #61), Plaintiff seeks to compel Defendant to produce various documents and to "completely answer" deposition questions related to Defendant's current supplier of synthetic lubricants (Doc. #61 at 1).[3] More particularly, Plaintiff seeks to compel Defendant to produce: (1) Defendant's written agreement with its current supplier of synthetic lubricants; (2) the identity of Defendant's current supplier; and (3) details concerning the terms of their business relationship (Doc. #61 at 1).

Plaintiff maintains said discovery is relevant in order to defend against the counterclaim because such information relates to whether Defendant mitigated its damages (Doc. #61 at 2).[4] Plaintiff asserts that Defendant's non-compliance with its discovery request is "particularly unjustified" in light of the fact a protective order is in place (Doc. #61 at 3; *see also* Doc. #55-2, Protective Order).[5] Plaintiff contends the Protective Order was intended to facilitate discovery while preserving the confidentiality of sensitive business information; thus, Plaintiff would be "unfairly prejudiced" by Defendant's refusal to disclose the identity of its current supplier and its refusal to produce the current supplier agreement (Doc. #61 at 3). Moreover, Plaintiff argues that Defendant cannot establish the existence of any privilege; therefore, said information is discoverable (Doc. #61 at 8).

---

[3] At the request of Defendant's counsel, Todd E. Turnquist, Defendant's corporate representative, did not answer deposition questions related to the identity of Defendant's current supplier of synthetic lubricants because Defendant has allegedly entered into a confidentiality/non-disclosure agreement with said supplier (*see* Doc. #61-3 at 3-5).

[4] Plaintiff supplied Defendant with synthetic oil products prior to the breakdown in their business relationship. In its counterclaim, Defendant alleges, *inter alia*, that Plaintiff breached its manufacturing agreement with Defendant and misappropriated trade secrets and other proprietary and confidential information (Doc. #9 at 9-18).

[5] The Protective Order contains a provision allowing any party to designate sensitive business information as "Confidential - Attorneys' Eyes Only" (*see* Doc. #55-2).

Defendant objects to Plaintiff's requests on the basis that it has entered into a confidentiality/non-disclosure agreement with its current synthetic lubricant supplier, which provides that neither party shall disclose any facts with respect to the nature of their business relationship (Doc. #63 at 2). Defendant maintains that, even though there is a protective order in place (*see* Doc. #55-2), Defendant would be in breach of its agreement with its new lubricant supplier if it were to disclose the identity of said supplier (Doc. #63 at 2). Defendant also maintains that there is no written manufacture/supply agreement between it and the new supplier because the parties simply began doing business together (Doc. #63 at 3). Defendant claims it merely orders product(s) from the new supplier and that the new supplier delivers the desired product(s) (Doc. #63-2, Declaration of Todd E. Turnquist). Defendant further responds that Plaintiff already possesses information necessary to determine whether Defendant mitigated its damages (Doc. #63 at 2-5).[6]

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *Id.* The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts and, therefore, embody a fair and just result. *United States v. Proctor &*

---

[6]In their respective depositions, Mr. Todd Turnquist and Mr. Jefferson Green apparently provided answers to questions regarding the timing, nature, and terms of Defendant's relationship with its new supplier; however, said individuals were instructed by defense counsel not to disclose the identity of the subject supplier (Doc. #63 at 4-5; Doc. #61-3 at 5-10).

*Gamble Co.*, 356 U.S. 677, 682 (1958). Courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted:

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir.1973)[7] *(citing Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)). The scope of permissible discovery, however, is not unlimited. The requested discovery must be relevant, and must not impose an undue burden. Fed. R. Civ. P. R. 26(b)(2)(C).

Moreover, under Rule 26(c)(G) of the Federal Rules of Civil Procedure, there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery. *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 326 (S.D. Fla. 1985). In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure would be harmful. *Id.* Once these requirements are met, the burden shifts to the other party to establish that discovery of the subject trade secrets or confidential information is relevant and necessary to the action. *Id.*

The court then must balance the need for protection of the trade secrets against the claim of injury resulting from disclosure. *Id.* Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should

---

[7] Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

be disclosed unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing. *Id.*; *see also Centurion Industries, Inc. v. Warren Steurer & Associates*, 665 F.2d 323 (10th Cir. 1981). Determination of whether the need outweighs the harm of disclosure falls within the sound discretion of the trial court. *Cutler v. Lewiston Daily Sun*, 105 F.R.D. 137, 140 (D. Maine 1985).

Under Rule 26(c), however, a party seeking to avoid disclosure of materials by protective order "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury. . . ." *Empire of Carolina, Inc.,* 108 F.R.D. at 326 (*quoting Citicorp v. Interbank Card Association*, 478 F.Supp. 756 (S.D.N.Y. 1979)); *see also Preferred Care Partners Holding Corp., v. Humana, Inc.*, 2008 WL 4500258 at *2 (S.D. Fla Oct. 3, 2008) (District Court upholding Magistrate Judge's order compelling production of confidential information under the conditions that said information be provided under the agreed confidentiality/protective order that was in place and that the names of the confidential third parties be redacted).[8]

Here, Plaintiff has requested information from Defendant regarding Plaintiff's attempt(s), if any, to mitigate its claimed damages. In a breach of contract action, an affirmative obligation is placed on the non-breaching party "to take reasonable steps to avoid, or minimize, loss, but is not required to enter ameliorating transactions that are risky." *Tampa Pipeline Transp. Co. v. Chase Manhattan Serv. Corp.*, 928 F.Supp. 1568, 1579 (M.D. Fla. 1995) (*citing* RESTATEMENT (SECOND) OF CONTRACTS § 350 cmt. g (1979)).

---

[8]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

With respect to the determination of whether, and to what extent, Defendant may have mitigated its claimed damages, the undersigned finds the relationship between Defendant and its current lubricant supplier is relevant to the issues presented in this litigation. The Supreme Court has broadly construed the term "relevancy" under Rule 26 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In this instance, the relationship between Defendant and its new supplier is relevant because it could reasonably bear on the issue of mitigation of damages.[9]

Moreover, at the hearing, Plaintiff's counsel made the cogent argument that Paragraph 6 of the Protective Order (Doc. #55-2 at 6-7) contemplates the disclosure of current distributors and/or suppliers under the protection of the "Attorneys' Eyes Only" provision of the Protective Order. Paragraph 6 was apparently included in the Protective Order at the insistence of Defendant. Although Defendant maintains that it contacted its supplier and asked if its identity could be disclosed—to which the new supplier responded in the negative—Defendant also revealed that the subject Non-Disclosure Agreement contains a notice provision, whereupon the new supplier is to be given notice of any subpoenas issued or contemplated court action, so that it may have a chance to respond (*see* Doc. #71). The undersigned would note that notice was apparently given to the new supplier with respect to the instant motion; however, to date, the new supplier has not appeared to be heard.

---

[9]At the hearing it was revealed that Defendant's counterclaim damages are in the millions of dollars.

After considering the relevant case law and the parties arguments at the hearing, the undersigned finds Defendant has not met its heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury if an such disclosure was made pursuant to the "Attorneys' Eyes Only" provision of the Protective Order. Since Defendant maintains there is no written agreement between itself and its current supplier (from which the identity of the supplier could be redacted), the undersigned finds disclosure of the supplier's identity is necessary in this instance so that Plaintiff may discover information related any mitigation of damages on the part of Defendant.

In light of the fact that Defendant is engaged in a highly competitive industry and has entered into a non-disclosure agreement with its current supplier, the undersigned finds disclosure of the supplier's identity shall be made pursuant to the "Attorney's Eyes Only" provision of the Protective Order (*see* Doc. #55-2). In addition, Plaintiff shall take all necessary precautions that were discussed at the hearing to ensure any additional discovery related to the current supplier remains confidential and for attorneys' eyes only unless the Court orders otherwise.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion to Compel Documents and Answers to Deposition Questions (Doc. #61) is **GRANTED to the extent that** Defendant shall disclose the identity of its current synthetic lubricant supplier to Plaintiff under the "Attorneys' Eyes Only" provision of the Protective Order (Doc. #55-2). In addition, the deposition of Mr. Todd Turnquist shall be reopened so that Plaintiff may fully explore the issue of mitigation of damages as it relates to the subject supplier.

2. The Court finds attorneys' fees are not warranted in this instance, as there was a genuine dispute with respect to whether the potential harm of disclosure of Defendant's new supplier would outweigh the need for the particular discovery. The Court, however, finds Plaintiff shall be reimbursed its costs in having to reconvene the deposition of Mr. Todd Turnquist.

3. Plaintiff shall take all necessary precautions that were discussed at the hearing to ensure any additional discovery related to the current supplier remains confidential and for attorneys' eyes only unless the Court orders otherwise.

4. Plaintiff's Second Motion to Compel Production of Documents (Doc. #62) is **DEEMED MOOT with leave to refile, if necessary**.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of October, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge